UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


TABITHIA D. BELL                                                                    PLAINTIFF


            VS.                         Civil No. 2:14-cv-02193-MEF

CAROLYN W. COLVIN,                                                               DEFENDANT
Commissioner of Social Security Administration


### MEMORANDUM OPINION

Plaintiff, Tabitha D. Bell, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.   Procedural Background:

Plaintiff filed her application for SSI[1] on September 20, 2012, alleging an onset date of February 1, 2006, due to due to mental issues, depression, anxiety, panic attacks, mentally unstable, irresponsible, and back and knee problems. (T. 69, 155, 176, 250) Plaintiff's application was denied initially and on reconsideration. (T. 95-98, 102-103) Plaintiff then requested an

---

[1] Plaintiff had filed a prior application for disability; however, due to her not attending her hearing, the claim was dismissed on May 11, 2012. (T. 64)

1

administration hearing, which was held in front of Administrative Law Judge ("ALJ"), Hon. Glenn A. Neel, on July 3, 2013. Plaintiff was present, represented by counsel.

At the time of the hearing, Plaintiff was 29 years of age, and had the equivalent of a high school education. (T. 27) Plaintiff did not have any past relevant work. (T. 15)

On September 6, 2013, the ALJ found Plaintiff had the following severe impairments: obesity; depressive disorder, not otherwise specified; posttraumatic stress disorder ("PTSD"); generalized anxiety disorder/anxiety disorder, not otherwise specified; and, borderline and dependent personality traits. (T. 11) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from the date her application was filed, September 20, 2012, through the date of his Decision issued September 6, 2013. The ALJ determined Plaintiff had the RFC to perform light level work except she was able to only occasionally climb, balance, stoop, kneel, crouch, and crawl; perform work where interpersonal contact was incidental to the work performed; the complexity of tasks was learned and performed by rote, with few variables and little use of judgment; and, the supervision required was simple, direct and concrete. Further, the ALJ determined Plaintiff should not have contact with the general public. (T. 13)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on July 29, 2014. (T. 1-3) Plaintiff then filed this action on September 10, 2014. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 6) Both parties have filed briefs, and the case is ready for decision. (Doc. 11 and 12)

## II.   Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than

a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id.*

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § 416.920(a)(4)(v).

### III.    Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the date her application was filed September 20, 2012, through the date of the ALJ's Decision issued September 6, 2013. Plaintiff raises four issues on appeal, which can be summarized as: (A) the ALJ failed to fully and fairly develop the record; (B) the ALJ erred in his credibility determination; (C) the ALJ erred in his RFC determination; and, (D) the ALJ erred in step-five of his analysis. (Doc. 11, pp. 12-17)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### Fully and Fairly Develop the Record:

Plaintiff asserts the ALJ failed to fully and fairly develop the record when he failed to order a medical source statement from either Dr. Patricia J. Walz or Dr. Terry L. Efird, state agency medical consultative examiners. (Doc. 11, pp. 11-13) The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748

4

(8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). After reviewing the record, the undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision.

"A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id*. (internal quotations and citation omitted).

In the present case, Plaintiff contends the ALJ erred when he failed to order a medical source statement from either Dr. Walz or Dr. Efird. (Doc. 11, pp. 12-13) The Court disagrees.

The record contained mental health treatment records from Western Arkansas Counseling and Guidance Center ("WACGC") from 2010 through 2013. The record also contained the following examination reports: Dr. Walz, state agency medical consultant, performed a mental diagnostic evaluation (T. 375-380); Cheryl Woodson-Johnson, Psy.D, state agency medical consultant, conducted a mental RFC assessment (T. 382-399); Christal Janssen, Ph.D., state agency medical consultant, reviewed the record and affirmed Dr. Woodson-Johnson's assessment (T. 414); Dr. Chester Carlson, state agency medical consultant, performed a general physical examination (T. 416-420); Dr. Bill F. Payne, state agency medical consultant, conducted a physical RFC assessment (T. 70-79); Dr. Efird performed another mental diagnostic evaluation (T. 423-426); Kay Cogbill, M.D., state agency medical consultant, reviewed the record and gave great weight to Dr. Efird's opinion and determined Plaintiff did not have any severe mental impairments (T. 75-76); and, Kevin Santulli, Ph.D., state agency medical consultant, reviewed the record, gave great

weight to Dr. Efird's opinion, and determined Plaintiff did not have any severe mental impairments. (T. 87)

Both Dr. Walz and Dr. Efird provided their opinions as to effects of Plaintiff's mental impairments on her adaptive functioning in the areas of activities of daily living; communication, social interaction, capacity to cope with the typical mental demands of basic work-like tasks; and, her ability to attend, sustain, concentrate, and complete work-like tasks. (T. 379, 426) Further, two state agency medical consultants reviewed Dr. Walz's findings and provided a mental RFC assessment. (T. 384-385, 414)

In addition to the medical records and consultative examinations, the ALJ also considered Plaintiff's testimony, records submitted to the Commissioner, and third party statements in assessing Plaintiff's RFC.  In order for the Court to reverse or remand this case, the Plaintiff must demonstrate unfairness or prejudice resulting from the ALJ's failure to obtain a medical source statement from either Dr. Walz or Dr. Efird, and she has failed to meet that burden.  *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (absent unfairness or prejudice, we will not reverse or remand). The undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision.

### **Credibility Determination:**

Plaintiff argues the ALJ's credibility determination was nonexistent. (Doc. 11, pp. 16) It is the ALJ's duty to determine the Plaintiff's RFC.  Before doing so, the ALJ must determine the applicant's credibility, and how the Plaintiff's subjective complaints play a role in assessing her RFC. *Pearsall,* 274 F.3d at 1217-18.

Plaintiff argues the ALJ only devoted one sentence to explaining his credibility finding: "as for the claimant's testimony, the undersigned finds it is not consistent with the medical evidence as a whole and is discounted to that extent." (Doc. 11, pp. 16, T. 15) Plaintiff is mistaken.

The ALJ also considered other factors in assessing Plaintiff's credibility. For instance, Plaintiff indicated Celexa was effective for her mood symptoms, she shopped independently, lived alone, took care of her animals, socialized with friends, attended church regularly, wrote poetry, and completed her GED. (T. 14) Activities such as these are not consistent with Plaintiff's testimony where she claimed she did not want to do anything, cried all the time, and was a nervous wreck. (T. 13) "'[Q]uestions of credibility are for the [ALJ] in the first instance. If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (alterations in original) (quoting *Karlix v. Barnhart*, 457 F.3d 742, 748 (8th Cir. 2006)).

Because the ALJ's credibility determination was supported by good reasons and substantial evidence, the Court concludes that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006); *Dunahoo v. Apfel*, 241 F.3d at 1037 (holding that ALJ's decision to discredit plaintiff's testimony will be upheld if he gives a good reason for doing so, even if every factor is not discussed in depth).

**RFC Determination:**

Plaintiff argues that the ALJ's RFC assessment was not supported by substantial evidence. (Doc. 11, pp. 13-16) The Court disagrees.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant

7

evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009); *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

Plaintiff argues the ALJ's RFC did not account for the Plaintiff's unique and specific deficiencies; the ALJ should have contacted Ms. Susan Smith to allow her to explain whether her assessment from 2010 described Plaintiff's current functions; and, the ALJ erred by solely relying on the non-examining state agency medical consultants when formulating his RFC. (Doc. 11, pp. 14-16)

Regarding Plaintiff's first argument, Plaintiff indicated she had difficulty with self-care; completing tasks she started; she was sensitive to how people perceived her; she was immature and dependent upon others; and, she lacked the ability to go out into public. (Doc. 11, pp. 14)

In in his RFC determination, the ALJ took into consideration Plaintiff's immaturity and sensitivity by limiting her to jobs where supervision was simple, direct, and concrete.  Further, Plaintiff's sensitivity as to how others perceive her and her lack of ability to go out in public was

8

further limited by the ALJ when he determined that any contact she would have with others would be incidental to the work performed and she should not have contact with the general public. (T. 12-13) The ALJ further limited Plaintiff to unskilled work where the complexity of the tasks was learned and performed by rote with few variables and use of little judgment. (T. 12-14) "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968.

While Plaintiff claims she had difficulty with self-care and completing tasks in a timely manner, the evidence in the record showed Plaintiff might not be as limited as alleged. When Plaintiff was being treated at WACGC by Ms. Smith, licensed professional counselor, and advanced nurse practitioner Alice Slavens ("ANP Slavens"), she took her medications regularly; was able to maintain her grooming; took GED classes; obtained her GED; saw the positives around her; enjoyed day to day activities; and, she attempted to keep her house clean. (T. 362, 403, 404, 405, 409) Moreover, Plaintiff denied symptoms of depression or anxiety and stated she was "calm as a bee." (T. 409)

Plaintiff's grandfather passed away in late 2011, and Plaintiff received a $45,000 inheritance. (T. 45) Following her grandfather's passing, Plaintiff stopped mental health treatment, began drinking heavily, smoking methamphetamine, and within seven or eight months Plaintiff blew through the money. (T. 45, 404, 436) Plaintiff was discharged from WACGC in May 2012 with discharged diagnoses of PTSD, major depressive disorder, and ADHD. (T. 451-457) By December 2012, Plaintiff returned to WACGC for treatment. Plaintiff was diagnosed with PTSD; major depressive disorder, recurrent, moderate; ADHD; bereavement; and assessed a GAF score of 40.

Plaintiff met with ANP Slavens in January 2013, where Plaintiff had fair grooming and hygiene, she sat calmly on the furniture, and maintained good eye contact throughout the

evaluation; however, she related her mood had been depressed. (T. 437) ANP Slavens observed Plaintiff's thought process was logical and coherent; she was alert and oriented; and, her memory, concentration, attention, and reasoning appeared to be intact. (T. 437-438) Plaintiff appeared to be of average intelligence and her judgment and insight were fair. (T. 438) ANP Slavens diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychotic features; PTSD; polysubstance abuse; bereavement; and, ADHD.  ANP Slavens recommended Plaintiff resume Celexa and Klonopin, since it seemed to have worked in the past. (T. 438) Plaintiff resumed mental health treatment with WACGC, but it was not consistent.  Plaintiff either missed or cancelled six appointments with Ms. Smith. (T. 462-468)

The records show that when Plaintiff was compliant with treatment, Plaintiff's mental health issues improved and she was able to attend to her grooming, concentrate in her classes to pass her GED exams, and enjoyed life.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)).

Next, Plaintiff argues the ALJ should have contacted Ms. Smith to see if her prior 2010 assessment described Plaintiff's current functioning. (Doc. 11, pp. 14) The assessment Plaintiff referred to was two years prior to her filing this claim for SSI and it was at the beginning of her treatment, which would not show the improvement Plaintiff made after treatment.  Moreover, Ms. Smith is a licensed professional counselor and is not an acceptable medical source that could be used to establish a medically determinable impairment. 20 C.F.R. § 416.913(a)(1)-(5).  Since Ms. Smith is considered an "other source," her opinion is not a medical opinion and is not entitled to deference.

Plaintiff next argues the ALJ erred when he based his RFC determination on the findings of the non-examining state agency medical consultants because the reports from WACGC made it clear that Plaintiff's limitations were much more severe than the non-examining sources. (Doc. 11, pp. 15)  Of course, "[i]n order to be eligible for SSI benefits, '[Plaintiff] must show [that she] was under a continuing disability while [her] application was pending.'" *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Jernigan v. Sullivan*, 948 F.2d 1070, 1072 n.3 (8th Cir. 1991). As previously noted, Plaintiff protectively filed her SSI application on September 20, 2012. (T. 69)  Thus, Plaintiff's reliance on medical records dated years prior to the date she filed her SSI application is misplaced.

The relevant medical records from WACGC showed Plaintiff began treatment again on December 4, 2012.  While Plaintiff indicated she wanted treatment, she failed to show for her appointments with Ms. Smith. (T. 430, 462-468)

The ALJ then ordered a mental diagnostic evaluation, performed by Dr. Terry L. Efird, psychologist and state agency medical examiner, on October 20, 2012. (T. 423) Plaintiff indicated she filed for disability benefits secondary to "mental, my nerves," and she felt depressed half of the time.  Plaintiff had a history of outpatient mental health treatment at WACGC about a year prior to the evaluation; however, she was not taking any medication at the time of the evaluation. (T. 424) Plaintiff stated her use of alcohol was minimal; denied the use of illegal substances - even though she had abused both marijuana and methamphetamine; and, that she last used illegal substances in July 2012. (T. 424) Dr. Efird observed Plaintiff was appropriately dressed and groomed.  She appeared cooperative.  Her mood was normal to a bit anxious; affect was appropriate to content and no remarkable indications of acute emotional distress were noted;

speech was probably within reasonable limits with regard to rate and rhythm; and, her thoughts were primarily logical, relevant, and goal-directed. (T. 424)

Dr. Efird diagnosed Plaintiff with anxiety disorder, not otherwise specified; depressive disorder, not otherwise specified; methamphetamine abuse, in partial remission; and, assessed a GAF score of 55-65. (T. 425) During the evaluation, Plaintiff denied ever having a driver's license; she shopped independently; indicated she was very irresponsible with money and had a tendency to give it away; she was able to perform most of her activities of daily living adequately; socialized with a female friend twice a week; and, interacted with neighbors, at times. (T. 426) Dr. Efird observed Plaintiff communicated and interacted in a reasonably socially adequate manner and in a reasonably intelligible and effective manner. (T. 426) Dr. Efird opined Plaintiff had the capacity to perform basic cognitive tasks required for basic work like activities; she was able to track and respond adequately during the examination; did not have any remarkable problems with persistence and appeared to have the mental capacity to persist with tasks, if desired; completed most tasks within an adequate time frame; and, he determined Plaintiff was able to manage funds without assistance. (T. 426)

The ALJ also considered the state agency medical consultant's opinions in rendering his RFC determination. (T. 15) Despite both Dr. Cogbill's and Dr. Santulli's determination that Plaintiff did not possess any severe mental impairments, the ALJ gave the Plaintiff the benefit of the doubt and looked to her previous mental RFC assessment. (T. 15, 75, 87)  Dr. Woodson-Johnson reviewed the record; completed a mental RFC assessment; and determined Plaintiff could perform "work where interpersonal contact [wa]s incidental to work performed, e.g. assembly work; complexity of tasks [wa]s learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete (unskilled)." (T. 384) On July 9, 2011, Christal

12

Janssen, Ph.D., non-examining state agency medical consultant, reviewed the record affirmed Dr. Woodson-Johnson's mental assessment. (T. 414)

While Plaintiff argues the ALJ's RFC assessment was not supported by substantial evidence because it was based solely upon state agency consultative examiners, the Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo*, 377 F.3d at 807-08 (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding); *Masterson*, 363 F.3d at 738 (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records).

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Based on the objective medical evidence, opinion evidence, state-agency evidence, and the testimony of the Plaintiff, the Court concludes that the RFC determined by the ALJ is supported by substantial evidence.

**<u>Step Five Analysis:</u>**

Plaintiff alleges that since the ALJ erred in his RFC determination, the hypothetical proposed to the vocational expert did not contain an accurate description of the Plaintiff's limitations. (Doc. 11, pp. 17)

After listening to the hypothetical proposed by the ALJ, the vocational expert determined Plaintiff would have been able to perform the requirements of representative occupations at the light, unskilled work level such as maid/housekeeper (with 130,000 jobs in the national economy and 100 jobs in Arkansas) and a routing clerk/conveyor package sorter (with 42,500 jobs in the national economy and 340 jobs in Arkansas). (T. 59) The vocational expert also determined Plaintiff could perform the requirements of representative occupations at the sedentary, unskilled level such as production worker/compact (with 28,700 jobs in the national economy and 490 jobs in Arkansas), and hand packager (with 22,000 jobs in the national economy and 200 jobs in Arkansas. (T. 16, 59-60). The vocational expert also stated his testimony was consistent with the information found in the *Dictionary of Occupational Titles.* (T. 61)

While the Plaintiff contends the ALJ failed to propound a hypothetical containing Plaintiff's actual limitations, the undersigned finds the ALJ properly relied upon the testimony of the vocational expert to determine that from September 20, 2012, through the date of his decision issued September 6, 2013, jobs existed in significant numbers in the national economy which Plaintiff could have performed. The Eighth Circuit has held "the ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation and citation omitted). Since the ALJ's RFC assessment was supported by substantial evidence, the Court finds the ALJ's hypothetical question propounded to the vocational expert proper, and the vocational expert's testimony constituted substantial evidence supporting the ALJ's determination the Plaintiff was not disabled from September 20, 2012, through the date of his Decision issued September 6, 2013.

## IV. Conclusion:

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits, and the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 18th day of August, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE